IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRADLEY HOSIER, INDIVIDUALLY AND ON BEHALF OF PERSONS SIMILARLY SITUATED, | § § § § |
| PLAINTIFF, | § CASE NO. 3:10-CV-294-J-32-JRK § |
| V. | § § COLLECTIVE ACTION |
| MATTRESS FIRM, INC., A FOREIGN CORPORATION, | § § § |
| DEFENDANT. | § |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Plaintiff Bradley Hosier (the "Named Plaintiff") and the Opt-In Plaintiffs listed on Exhibit A ("Opt-In Plaintiffs") on behalf of others similarly situated to them who were employed as Managers On Duty ("MODs") by Defendant Mattress Firm, Inc. between October 1, 2007 and May 26, 2011 (the "Relevant Time Period"), who are listed on Exhibit B ("Potential Opt-In Plaintiffs") and Mattress Firm, Inc. ("Mattress Firm"), subject to Court approval.

Mattress Firm, the Named Plaintiff and Opt-In Plaintiffs (collectively the "Settling Parties") do hereby agree to do all things and procedures necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Mattress Firm of the consideration expressed herein subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims of failure to pay minimum

**EXHIBIT 2**

wages and overtime compensation for work performed during the Relevant Period by the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs who become Qualified Claimants; and (c) other valuable monetary and non-monetary consideration as set forth herein.

## I.     CONSENT TO COURT FACILITATED NOTICE

A.    For settlement purposes only, the Settling Parties agree that the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs are similarly situated for purposes of 29 U.S.C. § 216(b) and consent to Court-facilitated notice to the Potential Opt-In Plaintiffs.

B.    This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only. Mattress Firm does not waive, and instead expressly reserves, its rights to challenge the propriety of whether similarly situated MODs exist and whether they should be provided with Court-facilitated notice pursuant to 29 U.S.C. § 216(b) should the Court not approve this Agreement.

C.    The Settling Parties shall cooperate and present to the Court for its consideration in connection with the approval of the Settlement Agreement and Court-facilitated notice competent evidence as may be requested by the Court under the appropriate standards for approving FLSA settlements and/or facilitated notice.

## II.    SETTLEMENT APPROVAL PROCEDURE

Within fourteen (14) days of the execution of this Agreement by the Settling Parties' counsel of record, Counsel for the Plaintiff and Opt-In Plaintiffs shall file a consent motion for approval of this Agreement and the Notice of Settlement and Consent to Join Form ("Notice of Settlement"), attached hereto as Exhibit C, advising Potential Opt-In Plaintiffs of material terms

and provisions of this Agreement, the procedure for submitting Consent to Join Forms, and their rights with respect thereto.

### III. MODE, CALCULATION AND TIMING OF PAYMENT OF CLAIMS

#### A. Notice of Claims

Within ten (10) business days of the Court's approval of this Settlement Agreement, Mattress Firm shall provide the Settlement Claims Administrator with an Excel chart listing the last known address, phone number, and Social Security number of the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. Plaintiffs' Counsel shall also provide the Settlement Claims Administrator with any updated addresses for the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. Prior to the mailing of the Notice of Settlement to the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs, the Settlement Claims Administrator shall attempt to confirm the accuracy of the names and addresses through the United States Post Office's National Change of Address. Within twenty (20) days of Court approval of this Agreement, the Claims Administrator shall mail the Notice of Settlement to the best address identified using the National Change of Address database for the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs. If any such Notice of Settlement is returned as undeliverable for a Potential Opt-In Plaintiff, the Claims Administrator shall promptly attempt to locate such Potential Opt-In Plaintiff through an electronic search using the Social Security number and/or former address of that person and shall promptly mail an additional Notice of Settlement to each such person. The Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs will be provided with a summary of the basis for settlement in the Notice of Settlement and told that in order to receive any monetary proceeds of the settlement, they must mail a

Consent to Join Form so that it is received by the Settlement Claims Administrator on or before sixty (60) days of the date the first Notice of Settlement was mailed to the Potential Opt-In Plaintiffs' last known address (the "Claim Bar Date"). In the event that Plaintiffs' Counsel or the Settlement Claims Administrator is contacted by a Potential Opt-In Plaintiff before the Claim Bar Date and the Potential Opt-In Plaintiff indicates that he or she did not receive the Notice of Settlement, the Settlement Claims Administrator shall mail an additional Notice of Settlement to the address provided by the Potential Opt-In Plaintiff. The Settlement Claims Administrator shall provide electronic copies of all Consent to Join Forms to Plaintiffs' Counsel, who shall file the Consent to Join Forms with the Court within 15 days of the Claims Bar Date. The Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs who timely return a completed Consent to Join Form will be considered "Qualified Claimants" entitled to receive their share of the Gross Settlement Fund as set forth on Exhibits A and B.

    **B.**    **Mattress Firm's Payment Obligations**

On or before August 8, 2011, Mattress Firm shall pay a total of One Million, Six Hundred Thousand Dollars ($1,600,000.00) (the "Gross Settlement Amount") by wire transfer to a Depository Bank chosen by the Settlement Claims Administrator.

    **C.**    **Settlement Claims Administration**

On or before ten (10) business days after the execution of this Agreement, the Settling Parties shall jointly agree upon a firm to serve as Settlement Claims Administrator. In the event the Settling Parties cannot agree upon such a firm, their dispute shall be decided finally by the Mediator serving as an Arbitrator on the issue. The Settlement Claims Administrator shall be responsible for: (i) calculating the individualized settlement payments and tax withholding

amounts for the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (ii) preparing, printing and disseminating to the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs the Notice of Settlement; (iii) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; (iv) preparing, monitoring and maintaining a toll-free number with phone answerers until 130 days after the mailing of checks to Qualified Claimants; (v) receiving and reviewing the Consent to Join Forms submitted by Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs to determine eligibility for payment; (vi) determining the Settlement Payment for each Qualified Claimant in accordance with this Settlement Agreement; (vii) mailing the settlement checks to Qualified Claimants; (viii) wiring Plaintiffs' Counsel's attorneys' fees, expenses, and costs and mailing Service Payments and Settlement Payments in accordance with this Settlement Agreement and Order of the Court; (ix) paying all payroll tax obligations of Mattress Firm in accordance with this Settlement Agreement; (x) issuing W-2 and 1099 Forms for all amounts paid to the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (xi) ascertaining current address and addressee information for each Notice of Settlement returned as undeliverable; (xii) responding to inquiries of the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs regarding the terms of settlement and procedures for filing Consent to Join Forms; (xiii) referring to Plaintiffs' Counsel all inquiries by the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of Plaintiffs' or Mattress Firm's Counsel; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate

records of its activities, including the dates of the mailing of the Notice of Settlement and mailing and receipt of Consent to Join Forms, returned mail and other communications and attempted written or electronic communications with the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs; (xvii) confirming in writing to Plaintiffs' and Mattress Firm's Counsel and the Court its completion of the administration of the settlement; (xviii) timely responding to communications from the Parties or their counsel; and (xix) such other tasks as the Parties mutually agree.

In addition, no later than twenty (20) days after the Claims Bar Date, the Settlement Claims Administrator shall provide Plaintiffs' and Mattress Firm's Counsel with a list of Qualified Claimants who timely submitted Consent to Join Forms. Throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notice of Settlement to Class Members, the claims administration process, the receipt of Consent to Join Forms, and distribution of the Settlement Checks or any other aspect of the claims administration process. In the event Consent to Join are timely submitted but do not contain a signature or sufficient information to identify the Potential Opt-In Plaintiff, the Settlement Claims Administrator shall provide the Potential Opt-In Plaintiff with a letter requesting the information that was not provided and giving the Potential Opt-In Plaintiff ten (10) days, excluding weekends and legal holidays, in which to respond. Any Potential Opt-In Plaintiff who fails to timely respond to a cure letter, will not be considered a Qualified Claimant.

Upon conclusion of the administration process, the Settlement Claims Administrator shall maintain an electronic copy of all Consent to Join Forms received by the Named Plaintiff, Opt-In

Plaintiffs, and Potential Opt-In Plaintiffs and shall provide the original Consent to Join Forms to Counsel for Mattress Firm.

**D.     Creation and Implementation of a Qualified Settlement Fund**

The Gross Settlement Amount will be deposited in an account titled Mattress Firm Settlement Fund (the "Settlement Fund"), intended by the parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. The Gross Settlement Amount is inclusive of payment for: (1) all Qualified Claimants; (2) all service awards approved by the Court for the Named Plaintiff and Opt-In Plaintiffs; (3) all attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Settlement Agreement, the claims process and implementing this Settlement Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; (4) all costs incurred by the Settlement Claims Administrator and all costs in connection with the Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Plaintiffs and Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (5) applicable federal, state and local taxes required to be withheld and/or paid by Mattress Firm.

The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Settlement Claims Administrator,

7

subject to the ultimate authority of the Court. Additionally, the Settlement Claims Administrator shall serve as Trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund. The Settlement Claims Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification.

The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

The Parties recognize that the back pay awards to Qualified Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows: the Settlement Claims Administrator shall serve as trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments. Specifically, the Settlement Claims Administrator shall be responsible for withholding, remitting, and reporting the share of payroll taxes from the back wage/payment of each Qualified Claimant, and shall be responsible for paying the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare). The Settlement Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify the Parties for any penalty or interest arising out of an incorrect calculation or late deposit of the same. Subject to the Settlement Claims Administrator's obligation to comply with applicable

8

laws, the Parties anticipate that any amounts designated as Service Payments, liquidated damages or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099.

The Settlement Claims Administrator shall satisfy from the Settlement Fund: all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and any and all taxes, penalties and other obligations with respect to the payments or distributions not otherwise addressed in this document.

All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Mattress Firm with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The Parties agree to cooperate with the Settlement Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Agreement.

    E.    **Allocation of the Gross Settlement Fund**

The amounts approved by the Court for Service Payments; the amount approved by the Court for attorneys' fees, expenses, and costs; the estimated amount of the employer's share of FICA and FUTA, and any other state-specific requirements on the settlement payments designated as back wages; and the estimated expenses of the Settlement Claims Administrator and the Settlement Fund shall be deducted from the Gross Settlement Amount to obtain a Revised Gross Settlement Amount.

The Revised Gross Settlement Fund shall be allocated to the Named Plaintiff and Opt-In Plaintiffs as set forth on Exhibit A and to Potential Opt-In Plaintiffs as set forth on Exhibit B in proportion to their share of the total amounts set forth on Exhibits A and B. The proportional share of the Revised Gross Settlement Fund of the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs shall be referred to as the Potential Gross Settlement Payment. The sum of the Potential Gross Settlement Payments for the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs shall equal the Revised Gross Settlement Amount.

The Potential Gross Settlement Payments attributed to the Named Plaintiff, Opt-In Plaintiffs, and Potential Opt-In Plaintiffs, who timely submit Consent to Join Forms and become Qualified Claimants, shall be allocated 50 percent to back wages and 50 percent to liquidated damages.

The back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages shall be treated as non-wage income to the Qualified Claimant. The Settlement Claims Administrator shall report the back wage payments

to the Qualified Claimants on an IRS Form W-2, and shall report the liquidated damages payments on an IRS Form 1099.

The back wage and liquidated damage payments, along with any service payments approved by the Court, shall be paid in accordance with this Agreement to Qualified Claimants within thirty (30) days of the Claim Bar Date.

Plaintiffs' Counsel shall make an application to the Court for an award of thirty percent (30%) of the Gross Settlement Amount or four hundred eighty thousand dollars ($480,000) as payment of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of their reasonable costs and litigation expenses from the Gross Settlement Amount. Mattress Firm will not oppose Class Counsel's attorneys' fees requests. Additionally, Mattress Firm will not oppose Class Counsel's attorneys' requests for reimbursement of costs or litigation expenses that are reasonable. The settlement is not conditioned upon the Court's approval of Class Counsel's petition for fees, costs, and litigation expenses and any amounts that are not approved for fees, costs, and litigation expenses, excluding the expenses and costs of settlement administration, shall revert to Mattress Firm.

Payment of amounts approved by the Court for Plaintiffs' attorneys' fees, costs, and litigation expenses shall be paid from the Gross Settlement Fund within ten (10) days of the date of the Court's order approving the Agreement and the amount of attorneys' fees, costs, and expenses becomes a final non-appealable order. Payment of such attorneys' fees, expenses, and costs to Class Counsel shall constitute full satisfaction of any and all obligations by Mattress Firm to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on

behalf of Qualified Claimants. The Settlement Claims Administrator shall report the payment of these fees, expenses and costs to Plaintiffs' Counsel on an IRS Form 1099.

From the Gross Settlement Amount, Class Counsel shall seek Service Payments for the Named Plaintiff and Opt-In Plaintiffs who timely submit Consent to Join Forms and become Qualified Claimants as payment for their significant involvement in commencing and discovering the claims represented in this litigation and their involvement in preparing for mediation for the benefit of the Potential Opt-In Plaintiffs, all as set forth in Exhibit A.

Qualified Claimants will have 120 calendar days after settlement checks are mailed out (the "Check Issuance Date") in which to negotiate the checks. If any Qualified Claimant does not negotiate his or her settlement check within 120 days after the Check Issuance Date, this check will be voided. Any funds remaining in the Settlement Fund after payment to: (1) all Qualified Claimants who timely cash their settlement checks; (2) all attorneys' fees, costs, and litigation expenses approved by the Court, including those in connection with securing Court approval of this Settlement Agreement, the claims process and implementing this Settlement Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; (3) all costs incurred by the Settlement Claims Administrator and all costs in connection with the Settlement Fund including, but not limited to, those related to notice, check cutting and mailing, claims processing, court filings, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Plaintiffs and Qualified Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below); and (4) applicable

federal, state and local income taxes, and all federal and state unemployment taxes required to be withheld and/or paid by Mattress Firm, shall revert to Mattress Firm.

## IV.     RELEASE BY QUALIFIED CLAIMANTS

Conditioned upon the receipt of an order of final approval by the Court and in exchange for the monetary considerations recited in this Agreement, the Named Plaintiff and Opt-In Plaintiffs do hereby agree to dismiss the captioned case with prejudice and all Qualified Claimants do thereby and forever release, acquit, discharge all minimum wage and overtime compensation claims that were or could have been asserted in this matter against Mattress Firm and its subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns, including without limitation, all state and feral claims for wages, penalties, interest, and liquidated damages, as well as all claims for attorneys' fees, costs, and expenses.

## V.     PUBLICATION OF SETTLEMENT

This Agreement is not confidential; however, Counsel for the Named Plaintiff, Opt-In Plaintiff, and Potential Opt In Plaintiffs and the Named Plaintiff and Opt-in Plaintiffs agree to make no statement to the media relative to this settlement and agree to make no press or media release and Counsel for Plaintiffs shall not place any reference to this settlement on their website or advertising materials.

## VI.     TOLLING AGREEMENT

The Settling Parties agree that the tolling agreement contained in the stipulation filed with the Court on March 11, 2011 shall remain in force during the period between June 11, 2011 and the date the Court approves this Agreement. Upon Court approval of this Agreement, the

Settling Parties' tolling agreement shall be null and void for any current or former employee of Mattress Firm who does not become a Qualified Claimant.

## VII.   NOTICES

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:   Sam J. Smith
Burr & Smith, LLP
442 W. Kennedy Blvd., Suite 300
Tampa, FL 33606
Telephone: (813) 253-2010
Facsimile: (813) 254-8391
ssmith@burrandsmithlaw.com

Counsel for Mattress Firm:   Edward B. Adams
Fulbright & Jaworski
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
eadams@fulbright.com

## VIII.   REPRESENTATION BY COUNSEL

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

## IX.   NO ADMISSION OF LIABILITY

The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement is disputed by Mattress Firm.  This Agreement and the

settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement. The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## X.     MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the respective counsel of record for the Settling Parties and as approved by the Court.

## XI.     CONSTRUCTION AND INTERPRETATION

This Agreement constitutes the entire agreement between the Settling Parties. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence. This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Florida, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject to the continuing jurisdiction of the United States District Court for the Middle District of Florida. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was

principally responsible for drafting this Agreement and/or the written memorandum of understanding, or any specific term or condition thereof. The Named Plaintiff and Mattress Firm participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Named Plaintiff or Opt-In Plaintiffs, nor Mattress Firm may claim that any ambiguity in this Agreement should be construed against the other.

## XII.   COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XIII.   BINDING EFFECT

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement, as well as their respective attorneys, and subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns. Without limiting the foregoing, this Agreement specifically shall be binding upon the spouses, children, heirs, assigns, successors and offspring of all Qualified Claimants.

## XIV.   ATTORNEY FEES, COSTS AND EXPENSES

Except as otherwise specifically provided herein, the Settling Parties and all Qualified Claimants

shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of this litigation and shall not seek reimbursement thereof from any party to this Agreement. However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

### XV.  AUTHORITY OF COUNSEL

Counsel for the Named Plaintiff and Opt-In Plaintiffs, identified on Exhibit A, warrant and represent that they are expressly authorized by the Named Plaintiff and Opt-In Plaintiffs to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Counsel for Mattress Firm warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by Mattress Firm pursuant to this Agreement in order to effectuate its terms.

### XVI.  CONTINUING JURISDICTION

The Parties hereto agree to move for the United States District Court for the Middle District of Florida to retain continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the collective action litigation.

### XVII. EFFECT OF NON-APPROVAL

In the event that Agreement is not approved by the Court for any reason, this Agreement shall be terminated on the date the Court's order becomes final and non-appealable, and in addition: (1) the tolling agreement contained in the stipulation submitted to the Court by the

Settling Parties on March 11, 2011 and continued by this Agreement shall terminate; (2) the stipulation that the Opt-In Plaintiffs and Potential Opt-In Plaintiffs are similarly situated to the Named Plaintiff under 29 U.S.C. Section 216(b), and the releases contained herein shall be null and void; (3) within eleven (11) business days, any funds paid by Mattress Firm into the Settlement Fund shall be returned to Mattress Firm after the expenses of the Settlement Claims Administrator and the Settlement Fund have been paid; and (4) nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the litigation; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation.

AGREED to this 2nd day of August 2011:

_____
Mr. Gregg I. Shavitz
Florida Bar No. 11398
gshavitz@shavitzlaw.com
Mr. Hal B. Anderson
Florida Bar No. 93051
Hal.anderson@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Hwy., Suite 404
Boca Raton, Florida 33432
Phone: (561) 447-8888
Fax: (561) 447-8831

Sam J. Smith
Florida Bar No. 818593
ssmith@burrandsmithlaw.com
Marguerite M. Longoria
Florida Bar No. 998915
mlongoria@burrandsmithlaw.com
Burr & Smith, LLP
442 W. Kennedy Blvd., Suite 300
Tampa, Florida 33629
Phone: (813) 253-2010
Fax: (813) 254-8391

**Attorneys for Named Plaintiffs and Opt-In Plaintiffs**


*/s/ J. David Richeson*

J. David Richeson
FL Bar No. 175657
Richeson and Coke, PA
richesonpa@prodigy.net
P.O. Box 4048
317 South 2nd Street
Fort Pierce, Florida  34948
Telephone: (772) 465-5111
Facsimile:  (772) 466-0378

Edward B. Adams, Jr.
Texas Bar No.  00790200
eadams@fulbright.com
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

**Attorneys for Defendant,
MATTRESS FIRM, INC.**