IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRADLEY HOSIER, INDIVIDUALLY § <br> AND ON BEHALF OF PERSONS § <br> SIMILARLY SITUATED, § <br> § <br> PLAINTIFF, § <br> § <br> V. § <br> § <br> MATTRESS FIRM, INC., A FOREIGN § <br> CORPORATION, § <br> § <br> DEFENDANT. § | CASE NO. 3:10-CV-294-J-32-JRK <br> COLLECTIVE ACTION |

REPORT & RECOMMENDATION ON
CONSENT MOTION FOR ORDER APPROVING SETTLEMENT OF
<u>COLLECTIVE ACTION AND AUTHORIZING NOTICE OF SETTLEMENT</u>[1]

Pending before the Court is the consent motion of Plaintiff Bradley Hosier, on behalf of himself and others similarly situated to him, including Opt-in Plaintiffs Jonathan Ali-Carr, Carlton Bradford, Jenny Coello, Natalie Hill, Robinson Juste, Michael McGuire, Jacqueline Miller, James Mooney, Ramon Moses, Carlton Phillips, Clifford Richards, Michael Wright for approval of a settlement agreement they have entered into with Defendant Mattress Firm, Inc. ("Mattress Firm"). The proposed Settlement Agreement ("Settlement Agreement") provides that Mattress Firm will establish a common fund against which plaintiffs and others similarly situated to them may file claims in exchange for their release of wage claims brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, and

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

EXHIBIT 5

dismissal of this case with prejudice. Plaintiffs moved the Court for an order approving the terms reflected in the Settlement Agreement, authorizing the proposed notice to the potential opt-in plaintiffs of their opportunity to participate in the settlement, dismissing the case and retaining jurisdiction to enforce the terms of the Settlement Agreement.  No opposition having been made to this consent motion, for the reasons discussed below, it is respectfully recommended that plaintiffs' consent motion be **GRANTED.**

I. <u>**FACTS AND PROCEDURAL HISTORY**</u>

Plaintiff Bradley Hosier filed this FLSA collective action on April 8, 2010, to recover unpaid overtime compensation allegedly owed to him and all other similarly-situated persons, who are or were employed by Mattress Firm as Managers on Duty ("MOD"). *See* Dkt. 1, ¶¶ 1, 5-6.  Plaintiff alleges that throughout his employment, Mattress Firm misclassified him and other MOD's as exempt employees and denied them overtime under the Fair Labor Standards Act ("FLSA"). Mattress Firm denied Plaintiff's allegations, primarily relying on the FLSA's Section 7(i) retail and service establishment exemption. *See*, generally Dkt. 8 and *See* Declaration of Sam J. Smith ("Smith Decl.,") ¶ 5.  Since the filing of the Complaint, twelve other current and former Mattress Firm employees from Arizona, Texas and Georgia, have opted into the case.  *See* Dkt. 31, at 2.

During the pendency of the litigation, the Parties entered into an agreement to toll the statute of limitations on the claims of Plaintiff and all individuals who were employed as MODs, from October 1, 2010 until March 1, 2011.  Dkt. 31, at 2.  Having done so, the Parties suspended formal discovery efforts to enable the exchange of mediation-privileged information to attempt the voluntary resolution of the claims. *Id.*   At the conclusion of the

**EXHIBIT 5**

agreed upon stay of discovery, the Parties' concluded that they lacked sufficient discovery to resolve this case. *Id*.

On March 11, 2011, the Parties' filed a joint motion to revise the case management plan and extend the Parties' tolling agreement from March 11, 2011 through June 11, 2011, in order to implement a proposal for representative discovery, mediation, and if mediation failed, the filing of a motion for conditional certification. Dkt. 31. On March 28, 2011, the Court approved this revised plan. Dkt. 33.

In accordance with this revised plan, the Parties commenced discovery providing for depositions of sample plaintiffs and a Rule 30(b)(6) deposition of Mattress Firm. *See* Smith Decl., ¶ 8. Mattress Firm responded to requests for documents encompassing payroll, timekeeping, commission and personnel file documents for such sample plaintiffs. *Id*. Mattress Firm also deposed four sample plaintiffs in their home towns around the country prior to mediation. *Id*.

Using Mattress Firm's payroll and timekeeping data, plaintiffs' counsel constructed a comprehensive damage analysis and provided Mattress Firm with a comprehensive, settlement-privileged mediation brief. *Id.* at ¶ 10. On May 26, 2011, the Parties met with an experienced class-action mediator, Hunter Hughes, in Atlanta, Georgia, for a full day of mediation. *Id.* at ¶ 11. With the mediator's assistance, the Parties carefully and exhaustively negotiated a class-wide settlement of this action to resolve the disputed factual and legal issues on the terms set forth in the proposed Settlement Agreement. *Id*. The Parties seek this Court's approval of the terms of their Settlement Agreement and authorization to distribute the attached Notice of Settlement.

**EXHIBIT 5**

## II.     SETTLEMENT TERMS MEMORIALIZED IN PROPOSED SETTLEMENT AGREEMENT

The Parties' Settlement Agreement provides that Mattress Firm shall pay a total of One Million Six Hundred Thousand Dollars ($1,600,000.00) into a common fund that will be used to compensate MODs nationwide who were employed by Mattress Firm between October 1, 2007 and May 26, 2011 and who participated in training during which they were ineligible to earn commissions; received commissions that exceeded their draw during no more than one-twelfth of the commission periods during which they were entitled to receive commissions; or were paid less than one-and-one-half the applicable minimum wage amount during any commission period (hereinafter, collectively, "Potential Opt-in Plaintiffs"). *See* Smith Decl. ¶ 12 and Settlement Agreement, attached as Exhibit 2, thereto.

The Agreement provides that the plaintiffs who joined this case prior to settlement and those Potential Opt-in Plaintiffs who timely file Consent to Join and Release forms will be entitled to receive a share of the settlement fund based upon the estimated overtime back wages they could have recovered if the plaintiffs had prevailed on all claims for a three-year liability period. *Id.* ¶ 12, Exh. 2, and ¶ 13.

The Settlement Agreement provides that Named Plaintiff and the Opt-in Plaintiffs who joined this case prior to settlement and did not withdraw from the case to each receive a service payment of between $500 to $2,000 for their significant efforts participating in the investigation preliminary to the commencement of this litigation, the discovery of the claims and defenses, and in preparing for mediation for the benefit of themselves and all of the Potential Opt-In Plaintiffs. *Id.* ¶ 12, Exh. 2-A, and ¶ 22.

**EXHIBIT 5**

The Settlement Agreement also states that the fund compensates plaintiffs and Potential Opt-in Plaintiffs for their attorneys' fees and costs by providing that plaintiffs' counsel is entitled to seek thirty percent of the fund ($480,000) for attorneys' fees and litigation expenses as well as reimbursement for their reasonable costs. In addition, the Settlement Agreement provides that the employer's share of FICA and FUTA, and any other state-specific requirements on the settlement payments designated as back wages; and the estimated expenses of the Settlement Claims Administrator will come from the fund. *Id.* ¶ 12, Exh. 2, and ¶ 23.

### III.   DISCUSSION

#### A.   Conditional Certification and the Similarly-Situated Requirement

Conditional certification and court-facilitated notice regarding FLSA collective action litigation is warranted when plaintiffs demonstrate, as here, that there are others who may wish to opt-in and who are "similarly situated" with respect to the job requirements and pay provisions. *See Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs readily meet this standard. There are 12 Opt-In Plaintiffs who have signified interest by joining this case since it was initiated by Plaintiff Hosier and the parties have stipulated to certification. *See* Smith Decl., at ¶¶ 5, 8 and Exh. 2.

#### B.   The Settlement Represents a Fair and Reasonable Compromise of Disputed Claims

As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present

**EXHIBIT 5**

any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context. *Id.* This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See, Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In the settlement of an opt-in collective action under the FLSA, the court's role is to ensure that the employer does not "overreach" and take advantage of employees in settling claims for wages. *See Lynn's Food*, 679 F.2d at 1354. The Eleventh Circuit has not articulated additional standards for the fairness determination other than requiring that the settlement occur in the context of an adversarial lawsuit and resolve issues that are in dispute. Therefore, the Court may look to the factors that courts use to evaluate the fairness of settlements of Rule 23 class actions.

In *Bennett v. Behring Corp.,* the Eleventh Circuit suggested six factors for use in determining whether a settlement is fair, adequate, and reasonable pursuant to Rule 23. *See* 737 F.2d 982, 986 (11th Cir. 1984). These factors are: (1) the likelihood of success at trial;

**EXHIBIT 5**

(2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*

        1.   <u>The Likelihood of Success at Trial</u>

The plaintiffs have identified significant obstacles which posed risk of an unsuccessful outcome absent a pre-trial settlement. *See* Smith Decl., ¶¶ 11-15, 24. These include Mattress Firm's potential defense pursuant to the retail or service establishment exemption, 29 U.S.C. § 207(i). Plaintiffs also would have had to establish the number of overtime hours they worked during their employment. The plaintiffs would have risked that a jury would find that they worked less than the amount of hours for which they have been credited at settlement. *See* Smith Decl. at ¶ 10. Finally, Defendants have represented they would have opposed collective certification and/or moved to decertify any classes that were certified. *Id.* at ¶¶ 5, 10.

In sum, members of the settlement classes face factual and legal issues at trial that make the likelihood of success at trial uncertain. The risks inherent in this case strongly support settlement at this stage of litigation.

        2.   <u>The Settlement Falls Within The Range of Recovery Such That This Court Should Find It Is Fair, Adequate and Reasonable</u>

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). The range of possible recovery "spans from a finding of non-liability through varying levels

**EXHIBIT 5**

of injunctive relief." *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-1323 (S.D. Fla. 2005). Moreover, "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

This settlement resolves complex FLSA minimum wage and overtime claims for the 13 current plaintiffs and 1,995 Potential Opt-In Plaintiffs nationwide. *See* Smith Decl. at ¶ 17 and Exhibit B to the Settlement Agreement (identifying the Potential Opt-In Plaintiffs by tracking number). Plaintiffs' detailed models of the potential damages that could be recovered demonstrate the risks and diminution in damages which could have resulted in continuing litigation if plaintiffs had failed to prove willfulness to support a third year of liability or had prevailed only on the training period aspect of their claims. In addition, plaintiffs assessed the possibility of a total loss on the exemption issue under Section 7(i). Smith Decl., ¶ 10. These models support the conclusion that the Parties gross settlement of $1.6 million is a fair, adequate, and reasonable settlement worthy of approval.

        3.     <u>The Complexity, Expense and Duration of Litigation</u>

The case was filed on April 8, 2010. During the pendency of the case, the Parties conducted depositions of plaintiffs and defendant, exchanged thousands of pages of documents, including personnel, payroll, and compensation documents, among others. Smith

**EXHIBIT 5**

Decl., at ¶¶ 8-11.  This complex collective action was resolved only after mediation before an experienced class action mediator, Hunter Hughes, Atlanta, Georgia.  *Id*. at ¶ 11.  Based upon their experience, Plaintiffs' Counsel reasonably concluded that further litigation would increase the expenses of this litigation and would not likely reduce the risks the litigation held for the settlement classes. *Id.* at ¶ 20.

        4.     <u>The Substance and Amount of Opposition to the Settlement</u>.

This factor is applicable to Rule 23 settlements where the class is bound by the terms of settlement unless they affirmatively opt out of the settlement.  Potential Opt-In Plaintiffs will only be bound by the settlement if they affirmatively opt into the settlement after receiving the court-approved notice.  *Id.* at ¶ 16.

        5.     <u>The Stage Of Proceedings At Which The Settlement Was Achieved</u>.

The Parties reached settlement after more than a year of vigorous investigation and discovery in the course of litigation through comprehensive mediation under the close supervision of an experienced class-action mediator.  Smith Decl., ¶ 16.  Counsel for the Parties conducted sufficient discovery and prepared comprehensive damage models prior to settlement.  *Id*. at ¶¶ 17-21.  This factor and all of the *Bennett* factors support a finding that the settlement is fair, adequate, and reasonable.

    **C.**    **The Settlement Was The Result of Arm's Length Negotiations Free From Collusion**

A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), citing *Cotton,* 559 F.2d at 1330.  All indicia demonstrate that this Agreement was the result of hard-fought adversarial, arm's length

**EXHIBIT 5**

negotiations that have taken place over more than a year.  Smith Decl., at ¶ 20.  In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties.  *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001).  The plaintiffs have represented they were able to settle this action only after they engaged in a vigorous and comprehensive vetting and mediation of the wage practices at issue in this matter.  *See* Smith Decl., ¶ 11, , *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel").  The extensive litigation activities, including the depositions of sample plaintiffs and a Rule 30(b)(6) company representative, provide adequate assurance of the adversarial nature of this litigation and a finding that the settlement was the result of arm's-length bargaining.

Plaintiffs' counsel have outlined a plan demonstrating that distributions from the settlement fund will be equitable and based upon Mattress Firm's personnel and commission data.  *See* Smith Decl., ¶ 25.  In addition to plaintiffs, each Potential Opt-in Plaintiff who timely files a Consent to Join Form will receive a share of the settlement fund based on analysis of their actual commission data and employment tenure working as MODs for Mattress Firm.  *Id.*  The settlement distribution properly provides for an award to each of the Plaintiffs and Potential Opt-In Plaintiffs according to their individual pay rates, their commission earnings, and workweeks.  *Id.*

**EXHIBIT 5**

Under the terms of the proposed Settlement Agreement, the Named Plaintiff and the twelve Opt-in Plaintiffs will benefit from the receipt of modest service payments. *See* Smith Decl., ¶ 22 and Smith Decl. Exh. 2 and Exhibit A thereto. To recognize plaintiffs, whose time and dedication participating in the investigation, discovery and mediation which make a settlement possible, is not unusual. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where class members on average received $38,000).[2]

### D. Plaintiffs' Counsel Should Receive Thirty Percent of the Fund as Compensation for the Fees and Expenses They Have Incurred

The Parties agreed at mediation that plaintiffs' counsel could seek a fee that did not exceed thirty percent of the settlement fund. *See* Smith Decl., ¶ 23. Plaintiffs' Counsel thus seeks to be awarded thirty percent of the fund to compensate them for the attorneys' fees and expenses they have incurred representing the Plaintiffs and Potential Opt-In Plaintiffs. *Id.*

The plaintiffs' propose that the attorneys' fees and litigation expenses be compensated from a common fund pursuant to *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d

---

[2] District courts in the Eleventh Circuit routinely approved settlements granting named plaintiffs additional relief. *See, e.g., Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008); *Shores v. Publix Super Markets, Inc.*, No. 95-1162-CIV-T-25E,Consent Decree, Dkt. 319, at 90-91 (M.D. Fla. May 23, 1997) (named plaintiffs provided additional compensation for signing a full-release of claims, for time spent in depositions, for risk of litigation, and for spending substantial time and effort); *Haynes v. Shoney's, Inc.*, 1993 U.S. Dist. Lexis 749, *23, *137 (N.D. Fla. January 25, 1993) (approving as fair, adequate and reasonable a settlement that afforded each named plaintiff $100,000, while class members were required to file claim forms and provided a *pro rata* share of the remaining funds).

**EXHIBIT 5**

768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class"). The Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorneys' fees be awarded on the entire maximum gross settlement fund even though amounts to be paid to settlement class members who do not file claims form will remain the sole and exclusive property of Defendant. *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).

Plaintiffs' counsel's request of attorneys' fees and litigation expenses equal to 30 percent of the common fund is reasonable in this case, in light of the complexity and duration of the litigation. Plaintiffs' counsel has extensive experience litigating complex FLSA collective actions. *See* Smith Decl., ¶ 2 and accompanying Exhibit 1. As a result, plaintiffs' counsel efficiently resolved this case through extensive mediation and negotiation efforts rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation." MCL 4th § 14.121. As the Eleventh Circuit stated in *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988), "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model."

**EXHIBIT 5**

In similar cases, district courts in the Eleventh Circuit have frequently approved common fund attorneys' fee recoveries in the range requested here.  *See*, *e.g., Signorelli v. UtiliQuest, LLC,* 2008 U.S. Dist. LEXIS 109357, 8-9 (M.D. Fla. July 25, 2008) (awarding thirty percent of the Maximum Gross  Settlement Amount for fair and reasonable attorneys' fees, costs and expenses incurred in prosecution of litigation to be paid from the potential Maximum Gross Settlement Amount); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (attorneys' fees and costs equal to 30 percent of common fund approved); *Angione, et al. v. PSS World Medical, Inc.,* 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving attorneys' fees constituting 40% of common fund established for the benefit of 63 plaintiffs for unpaid overtime wages in case brought under FLSA and  California labor law); *see also, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006)(attorneys' fees and costs equal to 31.9 percent of common fund approved).

Finally, plaintiffs' counsel seeks the approval of a separate amount of costs from the settlement fund.  The FLSA provides for a mandatory award of "costs of the action" to a prevailing plaintiff.  29 U.S.C. § 216(b) and s*ee*, *e.g. Glenn v. Gen. Motors Corp.,* 841 F.2d 1567, 1575 (11th Cir. 1988) (stating that in awarding a judgment in FLSA cases, courts *shall* award costs as permitted by 28 U.S.C. § 1920) (quoting Section 216(b), emphasis added).  The costs for which plaintiffs' counsel seek approval are authorized under Section 1920, *see* Smith Decl., ¶ 25 and Exhibit 3 thereto, and are therefore, approved.  Plaintiffs' counsel shall be awarded $6,523.21 from the fund for reimbursement of such costs.

**EXHIBIT 5**

IV. <u>**Notice of Settlement**</u>

This Court may authorize the Parties to mail notice of this Settlement giving putative class members the opportunity to participate through the distribution of opt-in forms under section 216(b). *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Fla.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. LEXIS 109357 (M.D. Fla. July 25, 2008). The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in the settlement by filing Consent to Join Forms, while providing that those who do not elect to do so will not be bound to the outcome of the case. The Parties proposed Notice of Settlement fairly and clearly informs Potential Opt-In Plaintiffs of their legal options with respect to participating, or not, in the settlement of this litigation. *See* Smith Decl., ¶ 26, and accompanying Exh. 4.

V. <u>**Recommendation**</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that:

The District Court **GRANT** the Plaintiffs' Motion for Approval of Settlement of Collective Action;

1) Certify for settlement purposes a collective action consisting of MODs identified on Exhibit A and B of the Parties' Settlement Agreement who were employed by Mattress Firm between October 1, 2007 and May 26, 2011 who: (1) participated in training during which they were ineligible to earn commissions; (2) received commissions that exceeded their draw during no more than one-twelfth of the commission periods during which they were entitled to receive commissions; or (3) were paid less than one-and-one-half the applicable minimum wage amount during any commission period;

**EXHIBIT 5**

2) Approve issuance of the Notice and Consent to Join and Release to the Class of MODs and the disbursement of shares of the common fund to those who timely return Consent to Join and Release forms, in accordance with the terms proposed in the Settlement Agreement;

3) Approve service awards for the Named Plaintiff and Opt-In Plaintiffs in the amounts set forth on Exhibit 2-A to the declaration of Sam J. Smith.

4) Approve an award to Plaintiffs' Counsel's of thirty percent of common fund for attorneys' fees and expenses;

5) Approve an award of costs to Plaintiffs' Counsel in the amount of $6,523.21 from the common fund;

6) Enter final judgment dismissing this case with prejudice; and

7) Retain jurisdiction to enforce the Settlement Agreement.

**IN CHAMBERS** in Jacksonville, Florida, on _____.

_____
**MAGISTRATE JUDGE JAMES R. KLINDT
UNITED STATES DISTRICT COURT**

cc: Counsel and Parties of Record

**EXHIBIT 5**