**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRADLEY HOSIER, individually and on
behalf of persons similarly situated,

            Plaintiff,

vs.                                    Case No.  3:10-cv-294-J-32JRK

MATTRESS FIRM, INC., a foreign
corporation,

            Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

Before the Court is the Consent Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement (Doc. No. 50; "Motion"), and a copy of the parties' Settlement Agreement (Doc. No. 51 at Ex. 2; "Settlement Agreement"), both filed August 26, 2011.[2] Attached to the Settlement Agreement is a Notice of Settlement of Lawsuit for Unpaid Overtime Wages Against Mattress Firm, Inc. (Doc. No. 51-6; "Notice"), at 1-5; and the Consent to Join and Release Pursuant to 29 U.S.C. § 216(b) (Doc. No. 51-6), at 6-7. This case was brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"). In a FLSA case, the Court must make a finding that the settlement of the case represents "a fair and reasonable resolution of a bona fide dispute over the Act's provisions" after "scrutinizing the settlement for fairness." Lynn's Food Stores, Inc. v. U.S.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

[2] On June 23, 2011, an Order of Administrative Closure and Referral (Doc. No. 47) was entered, referring this matter "to the assigned United States Magistrate Judge for the preparation of a Report and Recommendation as to whether the parties' proposed settlement is a 'fair and reasonable resolution of a bona fide dispute' over FLSA issues." (citation omitted).

ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982); see also Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (unpublished).

In the Complaint, Plaintiff seeks for himself and others similarly situated "the payment of all overtime hours worked at one and one-half times their regular rate of pay for which they have not been properly compensated, liquidated damages and reasonable attorneys' fees and costs of suit." Compl. (Doc. No. 1), filed April 8, 2010, at 8. The parties have agreed, for settlement purposes only, that the definition of the class ("opt-in plaintiffs") should be as follows:

> [Managers on Duty] nationwide who: (1) were employed by Mattress Firm between October 1, 2007 and May 26, 2011 and who participated in training during which they were ineligible to earn commissions; (2) received commissions that exceeded their draw during no more than one-twelfth of the commission periods during which they were entitled to receive commissions; or (3) were paid less than one-and-one-half the applicable minimum wage amount during any commission period.

Motion at 4.

Although Defendant denies the allegations in the Complaint, the parties represent that they "carefully and exhaustively negotiated a class-wide settlement of this action to resolve the disputed factual and legal issues." Id. at 4. The parties agree that the Settlement Agreement represents a "reasonable and fair" resolution of this matter. Id. at 1-2. The parties request that the Court, all at once, approve the terms of the Settlement Agreement, "certify[] the case as a collective action, . . . authoriz[e] notice to workers similarly situated to [P]laintiff of their opportunity to participate in its benefits, dismiss[] the case with prejudice and retain[] jurisdiction to enforce the Settlement [Agreement]."

The parties' requested approach is different than the two-tiered approach typically followed in collective actions pursuant to the FLSA. See Hipp v. Nat. Life Ins. Co., 252 F.3d

1208 (11th Cir. 2001). In the two-tiered approach, the first stage is referred to as the "notice stage." Id. at 1218. "At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members." Id. This usually results in "conditional certification of the representative class." Id. (quotations omitted). Once the class is conditionally certified, "putative class members are given notice and the opportunity to opt-in." Id. (quotations omitted). When notice is provided to potential opt-in plaintiffs, the notice usually includes a procedure by which the potential opt-in plaintiffs can object to the proposed settlement terms. See, e.g., Doc. No. 128, Colson v. Cableview Commc'ns of Jacksonville, Inc., Case No. 3:09-cv-850-J-34JRK (M.D. Fla. July 28, 2011).

> The second [stage of the two-tiered approach] is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.

Hipp, 252 F.3d at 1218.

Here, the parties' request to follow an all-inclusive approach caused the undersigned concern, mainly because a named plaintiff proceeding in a collective action pursuant to 29 U.S.C. § 216(b) "has no right to represent" potential opt-in plaintiffs. Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1249 (11th Cir. 2003). Following the parties' requested approach would have the Court approving the terms of the settlement as fair and reasonable prior to the Court knowing how many plaintiffs are actually in the class.

Moreover, the parties' approach does not provide the potential opt-in plaintiffs with any way of objecting to the proposed settlement terms.

A hearing was held on October 18, 2011 to address the undersigned's concerns based on the procedural posture of the case and the requests made in the Motion. See Minute Entry (Doc. No. 54), filed October 18, 2011.  Counsel for both parties appeared personally and presented argument for their suggested course of proceeding. See id. At the hearing, the parties acknowledged that asking the Court to certify the case as a collective action and to approve a notice to potential opt-in plaintiffs at the same time as approving the terms of the settlement is different from the typical two-tiered approach. Although the parties could not cite to any cases from this district that have adopted the all-inclusive approach,[3] the parties indicated that the United States Court of Appeals for the Eleventh Circuit has only "suggest[ed]" that district courts adopt the two-tiered approach. See Hipp v. Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001).

The parties argue that their approach best suits the particular facts of the present case, which are as follows.  The parties engaged in extensive discovery and negotiations to resolve this matter. See Motion at 2-4.  At the outset of their negotiations, the parties agreed "to toll the statute of limitations on the claims of plaintiffs and [potential opt-in plaintiffs] who were employed . . . from October 1, 2010 until March 1, 2011." Id. at 2.  The parties represented at the hearing that tolling the statute of limitations significantly benefits

---

[3]   During the hearing, the parties cited to an Order (Doc. No. 15) entered in Kemper v. Rent-A-Center, Inc., Case No. 4:00-cv-435-RH (N.D. Fla. Dec. 28, 2000), as an example of a case that followed the parties' proposed approach.  One significant distinction between the instant case and Kemper is that the notice to potential opt-in plaintiffs in Kemper contained a provision which provided potential opt-in plaintiffs with the opportunity to challenge the dates of their employment, which could have either increased or decreased their monetary award.  No such procedure is included in the instant case.

-4-

...

potential opt-in plaintiffs by not foreclosing claims that would have otherwise become time-barred.  Further, the discovery conducted included extensive employment data on all potential opt-in plaintiffs who fit the agreed-to class definition.  <u>Id.</u> at 3, 4.  With that information, Plaintiffs' counsel "constructed a comprehensive damage analysis" that detailed the award to each potential class member.  <u>Id.</u> at 2-3; <u>see</u> Ex. 2-B (Doc. No. 51-4), filed August 26, 2011.  The parties analyzed the data and proceeded through their negotiations as if all potential opt-in plaintiffs had already opted-in to the case.  <u>See</u> Motion at 3, 18; Ex. 2-B (Doc. No. 51-4).

Defendant agrees to place $1,600,000.00 in a common fund.  <u>Id.</u> at 4; Settlement Agreement at 4.[4]  The common fund will be used to pay the overtime back wages due to the named Plaintiff, the Plaintiffs who have already opted-in to the case, and the potential opt-in plaintiffs; service payments[5] to the named Plaintiff and twelve opt-in Plaintiffs who joined the case prior to settlement; attorneys' fees to Plaintiffs' counsel (30% of the common fund or $480,000.00); costs to Plaintiffs' counsel in the amount of $6,523.21; the amount of the employer's share of FICA and FUTA and any other state-specific requirements on the settlement payments designated as back wages; and the estimated expenses of the Settlement Claims Administrator.  Motion at 4-5.  Any portion of the common fund that is not distributed will be returned to Defendant.  <u>See</u> Settlement Agreement at 12-13.

---

[4]  At the hearing, Defendant indicated that $1,600,000.00 has already been placed in the common fund.

[5]  The parties represent that the service payments are "[t]o recognize plaintiffs, whose time and dedication participating in the investigation, discovery, and mediation which make a settlement possible."  Motion at 16.  The service payments range from $500-$2,000 and are to be paid to the named Plaintiff and the twelve opt-in Plaintiffs for a total of $12,000.  <u>See</u> Doc. No. 51 at Ex. 3.

Given the undersigned's concerns, the parties represented at the hearing that as an alternative to their all-inclusive approach, they would not oppose a recommendation that a modified two-tiered approach, as outlined in Su v. Electronic Arts, Inc., Doc. No. 50, Case No. 6:05-cv-131-Orl-28JGG (M.D Fla. Apr. 12, 2006), be followed in this case.[6]  In Su, the parties sought preliminary approval of their settlement agreement at the same time they sought approval of the notice to be sent to potential opt-in plaintiffs. See id. at 1.  The court denied "as premature" the portion of the motion seeking preliminary approval of the settlement and stated that "[t]he [c]ourt will not evaluate the fairness of the settlement until all [p]laintiffs have appeared in the action, and have had an opportunity to object to the terms of the settlement." See id. at 4.  After the time had run for plaintiffs to opt-in, the court held a final approval hearing, and thereafter, approved the settlement. Su v. Elec. Arts, Inc., Case. No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug. 29, 2006) (unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2006) (unpublished).

Although the undersigned recognizes the extensive discovery and analysis the parties have conducted in this matter, the undersigned is not convinced that following an all-inclusive approach is appropriate.[7]  Upon review of the Motion and consideration of the parties' arguments and the applicable law, the undersigned recommends that the procedure as outlined in Su be followed.  In light of this recommendation, the Notice must be amended. Specifically, the Notice should be amended to reflect that the Court has not yet approved

---

[6] See also Leigh v. Bottling Group, LLC, Case No. DKC 10-0218, 2011 WL 1231161 (D. Md. Mar. 29, 2011) (unpublished) (adopting approach taken in Su).

[7] Initially during the hearing, it appeared that the concerns had been resolved. However, upon further review of the case and the applicable law, the undersigned is not so convinced.

the terms of the settlement, and it should provide a procedure by which potential opt-in plaintiffs can object to the proposed terms.[8]

After due consideration, it is

**RECOMMENDED**:

1.   That the Consent Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement (Doc. No. 50), as supplemented by the parties' representations at the hearing held on October 18, 2011, be **GRANTED in part and DENIED without prejudice in part**.

2.   That the Motion be **GRANTED** to the following extent:

A.   This matter, for purposes of settlement, should be conditionally certified as a collective action under 29 U.S.C. § 216(b) with the class definition being as follows: Managers on Duty nationwide who: (1) were employed by Mattress Firm, Inc. between October 1, 2007 and May 26, 2011 and who participated in training during which they were ineligible to earn commissions; (2) received commissions that exceeded their draw during no more than one-twelfth of the commission periods during which they were entitled to receive commissions; or (3) were paid less than one-and-one-half the applicable minimum wage amount during any commission period.

B.   The parties should be directed to amend the Notice in accordance with this Report and Recommendation and to submit the amended notice for the Court's

---

[8] The Notice and the Consent to Join and Release Pursuant to 29 U.S.C. § 216(b) were collectively filed as Document Number 51-6, and the proposed Settlement Share Form with Service Payment and Settlement Share Form were collectively filed as Document Number 52-2. For ease of review, the amended notice should be filed as one document that includes all correspondence to be mailed to the named Plaintiff, opt-in Plaintiffs, and potential opt-in plaintiffs.

approval. The amended notice shall include all correspondence to be mailed to the named Plaintiff, the opt-in Plaintiffs, and potential opt-in plaintiffs.

      C.      The parties should be directed to file a notice informing the Court of their selected Settlement Claims Administrator for the Court's approval.

      D.      Within ten (10) days of the Court's approval of the amended notice and the Settlement Claims Administrator, Defendant should be directed to provide the Settlement Claims Administrator with an Excel chart listing the last known address, phone number, and social security number of the named Plaintiff, the opt-in Plaintiffs, and the potential opt-in plaintiffs.

      E.      The Settlement Claims Administrator should be directed to confirm the accuracy of the names and addresses through the United States Post Office's National Change of Address prior to the mailing of the amended notice.

      F.      Within twenty (20) days of the Court's approval of the amended notice and the Settlement Claims Administrator, the Settlement Claims Administrator should be directed to mail copies of the amended notice to all persons who fit the approved class definition as outlined above.

      G.      If any of the mailings by the Settlement Claims Administrator are returned as undeliverable, the Settlement Claims Administrator should be directed to use its best efforts to update the address of the individual to whom the mailing was sent, through an electronic search using the social security number and/or former address of that person, and be directed to promptly resend the mailing to any such new address.

      H.      Any person to whom the amended notice is sent who wishes to opt-in to this matter should be directed to return his or her Consent to Join and Release Pursuant

to 29 U.S.C. § 216(b) (which will be collectively filed with the amended notice) to the Settlement Claims Administrator postmarked no later than sixty (60) days after mailing.

I. The Settlement Claims Administrator should be directed to provide electronic copies of all completed Consent to Join and Release Pursuant to 29 U.S.C. § 216(b) (which will be collectively filed with the amended notice) to Plaintiffs' counsel. Plaintiffs' counsel should be directed to file such forms with the Court.

J. The parties should be directed to file a motion for final certification of the class and approval of the settlement.

K. The Court should hold a final hearing to certify the collective action and to consider the fairness and reasonableness of the terms of the proposed settlement.

3. That in light of the above recommendations, the remainder of the Motion be **DENIED without prejudice**.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on December 29, 2011.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jld
Copies to:
Counsel of Record