**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRADLEY HOSIER, individually and on
behalf of persons similarly situated,

                Plaintiff,

vs.                                      Case No. 3:10-cv-294-J-32JRK

MATTRESS FIRM, INC., a foreign
corporation,

                Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

Before the Court is the Joint Motion for Final Order Approving Settlement of Collective Action and Dismissing Case (Doc. No. 65; "Motion"), filed May 18, 2012, and a copy of the parties' Settlement Agreement (Doc. No. 51 at Ex. 2; "Settlement Agreement"), filed August 26, 2011.[2] Along with the Motion, the parties filed the Declaration of Marguerite Longoria in Support of Joint Motion for Final Order Approving Settlement of Collective Action and Dismissing Case (Doc. No. 66); and the Declaration of Mark Patton in Support of Joint Motion for Final Approval of Collective Action Settlement (Doc. No. 66-2), on May 18, 2012.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual allegations on appeal.

[2] On June 23, 2011, an Order of Administrative Closure and Referral (Doc. No. 47) was entered, referring this matter "to the assigned United States Magistrate Judge for the preparation of a Report and Recommendation as to whether the parties' proposed settlement is a 'fair and reasonable resolution of a bona fide dispute' over FLSA issues." (citation omitted). Later, on January 23, 2012, the Honorable Timothy J. Corrigan, United States District Judge, entered an Order requesting the undersigned prepare a Report and Recommendation once the parties seek final certification of the class and approval of the settlement. Order (Doc. No. 57).

In the Motion, the parties "seek final approval of the [S]ettlement [Agreement] and request that the Court . . . dismiss the case with prejudice while retaining jurisdiction to enforce the terms of the [S]ettlement [Agreement]." Motion at 2. A hearing on the Motion was held on May 30, 2012, during which the undersigned heard from counsel of record for both parties. See Minute Entry (Doc. No. 68), filed May 30, 2012.

## I. Status

The Complaint was filed by the named Plaintiff on his own behalf and on behalf of others similarly situated on April 8, 2010. Compl. (Doc. No. 1), at 8. After the Complaint was filed, twelve (12) other Plaintiffs, purporting to be similarly situated to the named Plaintiff, opted in to the case. See Joint Stipulation and Motion to Adopt Proposed Revised Case Management Plan (Doc. No. 31), filed March 11, 2011, at 2. Thereafter, on June 9, 2011, the parties filed a Joint Notice of Settlement (Doc. No. 46), and on August 26, 2011, the parties filed the Consent Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement (Doc. No. 50; "First Motion"). Also on August 26, 2011, the Settlement Agreement and the Declaration of Sam J. Smith in Support of Plaintiffs' Consent Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement (Doc. No. 51; "Smith Decl.") were filed.

After holding a hearing on the First Motion on October 18, 2011, see Minute Entry (Doc. No. 54), the undersigned recommended that this case, for purposes of settlement, be conditionally certified as a collective action under 29 U.S.C. § 216(b) and that notice be issued to the potential opt-in plaintiffs who met the class definition. See Report and Recommendation (Doc. No. 55), entered December 29, 2011. The Report and

Recommendation was adopted, and the class was conditionally certified with the following definition:

> [Managers on Duty] nationwide who: (1) were employed by Mattress Firm between October 1, 2007 and May 26, 2011 and who participated in training during which they were ineligible to earn commissions; (2) received commissions that exceeded their draw during no more than one-twelfth of the commission periods during which they were entitled to receive commissions; or (3) were paid less than one-and-one-half the applicable minimum wage amount during any commission period.

Order (Doc. No. 57), entered January 23, 2012, at 2. The undersigned then approved the form and content of the Notice of Proposed Settlement of Lawsuit for Unpaid Overtime Wages Against Mattress Firm, Inc. (Doc. No. 58-1) and directed that notice be issued to the potential opt-in plaintiffs in accordance with the terms of the parties' Settlement Agreement. See Order (Doc. No. 59), entered February 7, 2012. During the notice stage, 775 persons, including the named Plaintiff and the twelve (12) initial opt-in Plaintiffs referenced above, timely completed and filed claim forms, thereby exercising their right to opt-in to this matter and be bound by the terms of the Settlement Agreement upon approval by the Court. Motion at 4; see Doc. Nos. 60, 61, 64. The 775 persons are collectively referred to herein as "Qualified Claimants."

After the notice stage was complete, the instant Motion was filed, the Court held the final certification and approval hearing, and the Motion is now ripe for review.

## II. Discussion

The undersigned first addresses the requisites for final certification of this matter as a collective action. Then the general terms of the Settlement Agreement are analyzed. Within the discussion of the general terms, the undersigned addresses two joint requests

made by the parties during the May 30, 2012 hearing; the proposed service payments to the named Plaintiff and the original twelve (12) opt-in Plaintiffs; the request for attorneys' fees to Plaintiffs' counsel; and the request for costs of the action.

## A. Final Certification as a Collective Action

The typical approach followed in collective actions pursuant to the FLSA involves two stages. Hipp v. Nat. Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001). The first stage is referred to as the "notice stage." Id. at 1218. "At the notice stage, the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members." Id. This usually results in "conditional certification of the representative class." Id. (quotations omitted). Once the class is conditionally certified, "putative class members are given notice and the opportunity to opt-in." Id. (quotations omitted).

> The second [stage of the two-tiered approach] is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.

Id.

The first stage in this matter is complete. The undersigned now proceeds with the second stage because before approving the terms of a proposed settlement agreement, the Court must make a decision whether final certification of the class is appropriate. See Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan.

19, 2012) (unpublished); Burkholder v. City of Fort Wayne, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (unpublished) (recognizing that when "parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective settlement"); see generally Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007). In making this decision, the undersigned must determine whether the Qualified Claimants are similarly situated by considering the following factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008) (internal quotations and citations omitted).

Here, the parties agree for purposes of settlement that all Qualified Claimants "are similarly situated." Settlement Agreement at 2; see Motion at 6; First Motion at 6. The parties represent that "the discovery in this case indicated that the [Qualified Claimants] share a common job description and allegedly performed similar job duties nationwide." First Motion at 6. If this case had proceeded to trial, Defendant would have raised various defenses that, if found persuasive, "would have been devastating to the Plaintiffs' case." Smith Decl. at 8. Certification of this case also serves judicial economy. If each individual Qualified Claimant had to file individual lawsuits rather than participate in this action, the Court could potentially be faced with 775 individual cases. Therefore, the undersigned finds for purposes of settlement, the Qualified Claimants are similarly situated, and this matter should be finally certified as a collective action.

### B. General Terms of Settlement

This case was brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"). In a FLSA case, the Court must make a finding that the settlement of the case represents "a fair and reasonable resolution of a bona fide dispute over the Act's provisions" after "scrutinizing the settlement for fairness." Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982); see also Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (unpublished).

In the Complaint Plaintiff brings two counts, both of which seek recovery of overtime compensation pursuant to the FLSA. Compl. at 6-7. Specifically, the named Plaintiff seeks for himself and others similarly situated "the payment of all overtime hours worked at one and one-half times their regular rate of pay for which they have not been properly compensated, liquidated damages and reasonable attorneys' fees and costs of suit." Id. at 8. Although Defendant denies the allegations in the Complaint, the parties represent they exhaustively negotiated "a fair and reasonable resolution of a bona fide dispute between the parties with respect to whether the employees at issue are entitled to overtime compensation under the FLSA and the amount of compensation due." Motion at 7-8 (internal quotations omitted). The parties indicate the Settlement Agreement meets Lynn's Foods standard for approval and the standard used for approving settlements of Rule 23 class actions, and they request that the Court find the same. Motion at 8. The parties further indicate all Qualified Claimants "who contacted Plaintiffs' counsel expressed support for the Settlement [Agreement]." Id. at 5.

The parties cooperatively engaged in extensive research and discovery prior to reaching a settlement. See Motion at 12-13, 16-17; Smith Decl. at 4-5. During the discovery process, Plaintiffs' counsel constructed "detailed models of the potential damages that could be recovered." Smith Decl. at 5. The detailed models demonstrated the approximate amount of back pay wages that would be due potential opt-in plaintiffs in various circumstances. Id. Additionally, the extensive research included an analysis of the amount of the settlement fund each potential plaintiff would receive if he or she timely opted in to this matter. See Doc. No. 51-4 at Ex. 2-B. The parties represent the "settlement is the result of hard-fought adversarial, arm's length negotiations that took place over more than a year . . . [and i]t was negotiated at arm's-length by experienced counsel, free from fraud or collusion." Motion at 13; see Declaration of Sam Smith at 7.

The Settlement Agreement requires Defendant to place $1,600,000.00 in a common fund. See Settlement Agreement at 4.[3] The common fund will be used to pay the overtime back wages due to all Qualified Claimants; service payments to the named Plaintiff and twelve (12) original opt-in Plaintiffs who joined the case prior to settlement; attorneys' fees to Plaintiffs' counsel (30% of the common fund or $480,000.00); costs to Plaintiffs' counsel in the amount of $6523.21; the amount of the employer's share of FICA and FUTA and any other state-specific requirements on the settlement payments designated as back wages; and the estimated expenses of the Settlement Claims Administrator. Id. at 7. Any portion of the common fund not distributed will be returned to Defendant. See id. at 12-13.

---

[3] At the October 18, 2011 hearing and the May 30, 2012 hearing, as well as in the Motion, the parties indicate Defendant has placed $1,600,000.00 in the common fund. See Motion at 5.

Upon reviewing the terms of the Settlement Agreement, the undersigned finds that it represents a fair and reasonable resolution of a bona fide dispute pursuant to the FLSA. See Lynn's Food, 679 F.2d at 1355.

**1. Joint Requests Made at the May 30, 2012 Hearing**

At the May 30, 2012 hearing, the parties requested the following condition be made part of the Court's final Order approving the terms of the Settlement Agreement: within fourteen (14) days of entry of a final Order approving the terms of the Settlement Agreement, the Settlement Claims Administrator shall (1) mail all payments, including service payments, to Qualified Claimants; (2) wire any award of attorneys' fees and costs to Plaintiffs' counsel; and (3) refund any amount remaining in the common fund to Defendant, all in accordance with the terms of the Settlement Agreement. The parties made this request because the language in the Settlement Agreement contemplated all payments already having been made as of the date of the May 30, 2012 hearing.

Also during the May 30, 2012 hearing, the undersigned asked the parties to elaborate on their request for the Court to retain jurisdiction to enforce the terms of the Settlement Agreement. The parties indicated that because the approval of the Settlement Agreement triggers a number of actions that must be taken, and due to the number of Qualified Claimants in this matter, it would not only be in the parties' best interests, but it would serve judicial economy, if the Court would retain jurisdiction to enforce the terms of the Settlement Agreement if any disputes should arise. Given the somewhat unique procedural history of this matter, coupled with the extensive efforts put forth by both sides, and having reviewed in detail the terms of the Settlement Agreement and being persuaded by the parties'

argument, the undersigned recommends that the Court retain jurisdiction to enforce the terms of the Settlement Agreement in this action. See generally Mesa v. Ag-Mart Produce, Inc., [multiple case nos. omitted], 2010 WL 4909591, at *3 (M.D. Fla. Nov. 19, 2010) (unpublished) ("reserv[ing] jurisdiction to enforce the terms of the settlement agreement"); Ratajczyk v. Sierra Contractors, Inc., No. 2:09-cv-754-FtM-36DNF, 2010 WL 4116999, at *1 (M.D. Fla. Oct. 19, 2010) (unpublished) (same); Signorelli v. Utiliquest, LLC, Nos. 5:08-cv-38-OC-10GRJ, 5:08-cv-39-OC-10GRJ, 5:08-cv-40-OC-10GRJ, 2008 WL 7825757, at *5 (M.D. Fla. July 25, 2008) (unpublished) (same); Angione v. PSS World Med., Inc., No. 3:02-cv-854-J-25MCR, Doc. No. 95 (M.D. Fla. Nov. 5, 2004) (same).

### 2. Service Payments

The Settlement Agreement provides "modest service payments" to the named Plaintiff and the twelve (12) opt-in Plaintiffs who joined this case prior to settlement and assisted in the discovery process. Motion at 14-15; Settlement Agreement at 12. The parties represent that the service payments are "[t]o recognize plaintiffs, whose time and dedication participating in the investigation, discovery, and mediation which make a settlement possible." First Motion at 16; see Motion at 14-15. These service payments range from $500-$2000 for a total of $12,000. See Doc. No. 51-3 at Ex. 2-A. The total amount of service payments represents less than 1% of the settlement fund. Motion at 15.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting In Re S. Ohio Correctional Facility, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); see Su v. Elec.

Arts, Inc., No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *1, 2 (M.D. Fla. Aug. 29, 2006) (unpublished Report and Recommendation), adopted, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2006) (unpublished); see also Sheppard v. Consol. Edison Co. of N.Y., Inc., No. 94-CV-0403(JG), 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (unpublished) (collecting cases). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." Ingram, 200 F.R.D. at 694.

Given the amount of time and effort put forth by the named Plaintiff and original opt-in Plaintiffs and the inherent risk taken, and upon consideration of the amounts proposed, the undersigned finds the service payments are reasonable and should be awarded.

### 3. Plaintiffs' Request for Attorneys' Fees

Plaintiffs' counsel requests an award of attorneys' fees in the amount of $480,000 (which represents 30% of the common fund) to be paid from the common fund. An award of reasonable attorneys' fees and costs is mandated under 29 U.S.C. § 216(b) if the employer is held liable. See 29 U.S.C. § 216(b) (indicating the court shall "allow a reasonable attorney's fee to be paid by the defendant"). "In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination." Dail v. George A. Arab, Inc., 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (citing Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998)); Su, 2006 WL 4792780, at *3 (citations omitted). However, the FLSA does not require the Court to conduct "'an in depth analysis . . . unless the unreasonableness of such award is apparent from the face of the documents.'" King v. My Online Neighborhood, Inc.,

No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007) (quoting Perez v. Nationwide Protective Servs., No. 6:05-cv-328-ORL-22JGG (M.D. Fla. Oct. 31, 2005)).

As the total fee award sought in this case is not patently unreasonable and Defendant does not contest the reasonableness of the award, the Court has not conducted an in-depth analysis of the attorneys' fees sought. The undersigned recognizes Plaintiffs' counsel extensive experience in FLSA actions. See Smith Decl. at 1-3; Doc. No. 51-1, at 1-6. Counsel expended numerous hours of work on this case and put forth extraordinary effort, both in and out of Court. Plaintiff's counsel also provided legal advice to all potential opt-in plaintiffs and all Qualified Claimants. Additionally, as noted above, Defendant does not contest the reasonableness of the fees requested. Upon consideration, the undersigned finds that the amount of attorneys' fees requested is reasonable.[4]

### 4. Costs of the Action

Finally, Plaintiffs' request for costs of the action should also be approved. Plaintiff provides a "Summary of Costs" and an invoice for each cost listed on the Summary. See Doc. No. 51-5 at Ex. 3, pp. 2-18. After reviewing the documentation provided, the undersigned finds that costs requested are permitted under 28 U.S.C. § 1920 and should be awarded in the amount of $6523.21, to be withdrawn from the common fund.

---

[4] Because the Court has not conducted an in-depth analysis of the attorneys' fees requested, the award of attorneys' fees in this action does not reflect a determination that the hourly rate or time charged by Plaintiffs' counsel constitutes a reasonable hourly rate in this or any applicable market.

### III. Conclusion

Being fully advised of the Motion, the terms of the Settlement Agreement, and the applicable law, the undersigned finds that the settlement reached is a fair and reasonable resolution of a bona fide dispute. See Lynn's Food, 679 F.2d at 1355. After due consideration, it is

**RECOMMENDED**:

1. That the Joint Motion for Final Order Approving Settlement of Collective Action and Dismissing Case (Doc. No. 65) be **GRANTED**.

2. That the Court enter an Order and Stipulated Final Judgment **APPROVING** the parties' settlement, including the amount of attorneys' fees, costs, and service payments, and certifying this matter as a collective action for settlement purposes.

3. That the Order and Stipulated Final Judgment direct the Settlement Claims Administrator to (1) mail all payments, including service payments, to Qualified Claimants; (2) wire any award of attorneys' fees and costs to Plaintiffs' counsel; and (3) refund any amount remaining in the common fund to Defendant, in accordance with the terms of the Settlement Agreement, **within fourteen (14) days** of entry of a final Order approving the terms of the Settlement Agreement.

4. That this case be **DISMISSED WITH PREJUDICE** and that the Clerk be directed to close the file.

5. That the Court retain jurisdiction to enforce the terms of the parties' settlement.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on June 8, 2012.

_____
JAMES R. KLINDT
United States Magistrate Judge

jld

Copies to:
Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record